UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Breanna Ray, *et al.*,                                        Case No. 3:24-cv-1276

          Plaintiffs,

    v.                                                       MEMORANDUM OPINION
                                        AND ORDER

Erie County Board of
Commissioners, *et al.*,

          Defendants.

## I. INTRODUCTION

Plaintiff Breanna Ray filed this suit ("*Ray II*") in the Erie County, Ohio Common Pleas

Court against Defendants Erie County Board of Commissioners ("ECBC"), Karen Balconi Ghezzi,

Natalie Colavincenzo, John Doe #1 ("Doe"), and Guiametta Giedeman, on behalf of herself and

her minor son, C.R. (Doc. 1-1). Plaintiffs assert various state and federal claims arising from

injuries C.R. sustained while in foster care. (*Id.* at 2, 11). Before filing *Ray II*, Plaintiffs brought a

related action ("*Ray I*") against Erie County Department of Job and Family Services ("ECDJFS")

and other defendants in the Erie County Common Pleas Court, based on the same underlying

incident. (Doc. No. 5-1). At the time *Ray II* was filed, *Ray I* was pending before the Ohio Court of

Appeals. (Doc. No. 14).

Defendants timely removed *Ray II* to this Court. (Doc. No. 1). Defendants ECBC, Ghezzi,

and Colavincenzo moved to dismiss for failure to state a claim. (Doc. No. 5). Plaintiffs filed a

response in opposition and moved to stay proceedings pending resolution of *Ray I* in the Ohio

Court of Appeals. (Doc. No. 11). Defendants filed a brief in reply. (Doc. No. 12). For the reasons

stated below, I grant Defendants' motion to dismiss Plaintiffs' § 1983 claim and remand their state law claims to the Erie County Common Pleas Court.

## II.  BACKGROUND

In April of 2022, ECDJFS—a department of Erie County—obtained temporary custody of Plaintiff Breanna Ray's two-month-old son, C.R.  (Doc. No. 1-1 at 3).  ECDJFS subsequently placed C.R. with Defendant Doe.  (*Id*.).  At the time of injury, Ghezzi served as Executive Director of ECDJFS, and Colavincenzo was the assigned social worker.  (*Id.* at 2).

On July 24, 2022, Doe left C.R. in the care of an unapproved babysitter, Defendant Giedeman.  (*Id*.).  While under Giedeman's supervision, C.R. sustained a broken arm and wrist.  (*Id*.).  The injuries allegedly occurred when another toddler in Doe's house fell on C.R.  (*Id.* at 6).  After receiving inconsistent stories as to the cause of C.R.'s injuries, Plaintiff Breanna Ray doubted the truthfulness of that explanation, and suspected the injuries were the result of abuse.  (*Id.* at 3).  ECDC eventually removed C.R. from Doe's care.  (*Id.* at 4, 7).

On August 4, 2023, Plaintiffs filed *Ray I* in the Erie County Common Pleas Court, naming multiple defendants, including ECDJFS.  (Doc. No. 5-1).  Counts included recklessness, negligence, bad faith or intentional cover-up, or both, negligent and intentional infliction of emotional distress, respondeat superior, and loss of consortium.  (*Id.* at 2).  ECDJFS moved for judgment on the pleadings, arguing it was immune under O.R.C. § 2744.02 (A)(1), and that it was not sui juris.  (Doc. No. 14 at 3).  On May 16, 2024, the trial court granted the motion without addressing the parties' arguments in writing.  (Doc. No. 5-2 at 1).  Plaintiffs timely appealed to the Ohio Court of Appeals.  (Doc. No. 14 at 5).

On appeal, Plaintiffs argued the trial court erred by: (1) granting ECDJFS' motion for judgment on the pleadings; (2) sua sponte dismissing claims against the remaining defendants; and (3) denying as moot her motion to compel disclosure of the foster parent's identity.  (*Id.* at 8).

The appellate court affirmed the trial court's judgment on the pleadings, holding that ECDJFS lacked the legal capacity to be sued, and identified ECBC as the proper defendant. (*Id.* at 12-13). Having based its decision on the issue of sui juris, the court declined to reach ECDJFS' asserted immunity defense. (*Id.* at 13).

The appellate court determined, however, that the trial court erred by dismissing the entire action prematurely. (*Id.* at 15). Under Ohio Civil Rule 3(A), Plaintiffs had one year from filing to correct the misidentified party and substitute the proper defendant—ECBC. (*Id.* at 14-15). The trial court improperly dismissed the action 80 days before the one-year time period had lapsed. (*Id.* at 15). Thus, the appellate court affirmed in part, reversed in part, and remanded. (*Id.* at 15-16). Plaintiffs later voluntarily dismissed *Ray I* without prejudice. (Doc. No. 15).

While *Ray I* was on appeal, Plaintiffs initiated this action in the Erie County Common Pleas Court, and Defendants timely removed. (Doc. No. 1-1). Plaintiffs again allege that C.R. suffered injuries while in Doe's care. (Doc. No. 1-1 at 3). Plaintiffs state Colavincenzo failed to properly investigate the injuries, failed to report suspected abuse, and "knowingly allowed C.R. to be abused, battered and neglected, in order to cover up her own negligence, individually and as an agent of Erie County." (Doc. No 1-1 at 3-5).

With respect to Ghezzi, Plaintiffs allege she "failed to investigate, and report, the abuse, harm and negligence C.R. was suffering from, in order to protect Erie County Job and Family Services and she has failed to disclose records and has attempted to cover up the abuse." (*Id.* at 5). Plaintiffs further allege Defendants did not obtain prompt medical attention for C.R.'s injuries. (*Id.* at 4).

Plaintiffs assert ECBC failed to investigate the source of C.R.'s injuries, investigate Doe and the unapproved babysitter, maintain adequate records, provide follow-up care, and attempted to cover up the incident. (*Id.*). Plaintiffs further contend ECBC employees failed to properly

investigate Doe before placing C.R. in his custody—an act which ECBC "authorized, approved, or knowingly acquiesced." (*Id.* at 8).

Lastly, Plaintiffs allege Defendants impermissibly left C.R. in the care of an unapproved babysitter, (*id.* at 5, 8), and breached their duty to protect C.R. from harm by placing him in a "dangerous and abusive home." (*Id.* at 6).

Based on these allegations, Plaintiffs bring claims for negligence or recklessness, or both, bad faith or intentional cover up, or both, assault/battery, negligent and intentional infliction of emotional distress, and a § 1983 claim for the violation of C.R.'s substantive due process rights. Plaintiffs further state the "factual allegations will constitute additional causes of action which include Respondeat Superior and Loss of Consortium." (*Id.* at 9).

## III.  STANDARD

A defendant may seek to dismiss a plaintiff's complaint on the ground the complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Factual allegations must be sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV.  ANALYSIS

Defendants move to dismiss on three grounds: (1) Plaintiffs' claims are barred by res judicata; (2) the state law tort claims are barred by political subdivision immunity under § 2744; and (3) Plaintiffs fails to state a plausible constitutional claim under 42 U.S.C. § 1983. (*See* Doc. No. 5). Plaintiffs respond that res judicata does not apply because ECBC was not a party to *Ray I*, that

statutory exceptions under § 2744.02(B) remove immunity, and that Defendants' failure to investigate Doe before placing C.R. in his care, and failure to protect C.R. from unnecessary harm while in foster care, violated his substantive due process rights. (*See* Doc. No. 1-1); (*see also* Doc. No. 11).

## A.  RES JUDICATA

Defendants argue that Plaintiffs' claims in *Ray II* are barred by res judicata because they arise from the same injuries that formed the basis of *Ray I*. (Doc. No. 5 at 11-12). They contend that Plaintiffs could have, and therefore should have, raised all claims—including her federal § 1983 claim—in the earlier action. (*Id.* at 18). According to Defendants, the dismissal of ECDJFS in *Ray I* precludes relitigation of the claims against ECBC and its employees, who they assert are in privity with ECDJFS. (*Id.* at 13-18). Defendants note that Plaintiffs brings the same claims based on the same conduct, but substitute ECDJFS with Ghezzi, Colavincenzo, and ECDC, and they observe that the causes of action in *Ray II* are nearly identical as those found in *Ray I*. (*Id.* at 7-9). Similar to *Ray II*, the *Ray I* complaint asserts counts of "recklessness," "negligence," "bad faith and intentional cover-up," and "negligent and intentional infliction of emotional distress." (Doc. No. 5-1 at 2).

Res judicata, or claim preclusion, prevents parties from re-litigating claims that were or could have been raised in a prior action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The purpose of the doctrine is to ensure finality in the judicial process and prevent vexatious re-litigation. *Id.* A federal court must "accord a state court judgment the same preclusive effect that the judgment would have in state court." *In re Fordu*, 201 F.3d 693, 703 (6th Cir. 1999). Under Ohio law—which governs the preclusive effect of the *Ray I* judgment—claim preclusion applies only if the defendant establishes four elements:

> (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4)

5

a second action arising out of the transaction or occurrence that was the subject
matter of the previous action.

*Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (citing *Felder v. Cmty. Mut. Ins. Co.*,

No. 96-3320, 1997 WL 160373, at *3-4 (6th Cir. April 4, 1997)).

Defendants' argument fails on the first element. "Only a dismissal going to the substance of

the controversy constitutes an adjudication on the merits." *Nat'l Crime Reporting, Inc. v. McCord &*

*Akamine, L.L.P.*, 895 N.E.2d 255, 257-58 (Ohio Ct. App. 2008). A finding that a party is not sui

juris addresses the legal capacity of an individual to sue or be sued independently. *Doe v. Skaggs*, 127

N.E.3d 493, 499 (Ohio Ct. App. 2018). It is not a finding that addresses the merits of a claim. As

the Ohio Court of Appeals recently explained:

> For an action to commence under [Ohio Civil Rule] 3(A), the trial court needs to
> obtain jurisdiction over the defendant—usually by service of process. But an
> individual or organization that lacks capacity to be sued cannot be a proper party
> defendant. Thus, lack of capacity prevents an action from commencing precisely
> because there is no proper defendant over whom the trial court may exercise
> jurisdiction, absent waiver. If a proper defendant was never served, then no case
> ever matured…to the point where the court had any jurisdiction over the matter.
> Lack of capacity means lack of personal jurisdiction. Because a dismissal for lack of
> capacity is a dismissal for…[l]ack of jurisdiction over the person, it operate[s] as a
> failure otherwise than on the merits. A dismissal for lack of capacity is a dismissal
> *without* prejudice.

*Love v. Hamilton Cnty. Job & Fam. Servs.*, No. C-240468, 2025 WL 1949586, at *4 (Ohio Ct. App. July

16, 2025) (internal quotations and citation omitted) (emphasis in original) (first alteration added, all

other alterations made by *Love*).

Ohio courts have similarly held that dismissals for procedural reasons—such as lack of

capacity —are not judgments on the merits and do not trigger res judicata. *See, e.g., L & W Supply*

*Co., Inc. v. Constr. One, Inc.*, No. 5-99-55, 2000 WL 348990, at *3 (Ohio Ct. App. Mar. 31, 2000)

(holding that in dismissing claim for lack of capacity, "[t]he court is clearly dismissing the appellant's

claim on a procedural aspect rather than on the merits."); *see also Nat'l Crime Reporting, Inc.*, 895

N.E.2d 255 at 257-58 ("[T]he lack of capacity to sue is purely a procedural matter and does not go to the underlying merits of the action.").

The Ohio Court of Appeals affirmed the dismissal of *Ray I* on the grounds that ECDFJS was not sui juris—that is, it lacks the legal capacity to be sued.  (Doc. No. 14 at 13).  The appellate court expressly affirmed the dismissal solely on this jurisdictional basis, explaining that an uncharted county and its agencies cannot be sued in their own right., and therefore cannot be named as a defendant.  (Doc. No. 14 at 12).  A dismissal for lack of capacity is a procedural or jurisdictional defect, not a substantive adjudication of the underlying claims.  Thus, because the dismissal in *Ray I* resolved only the procedural question of whether ECDJFS was a proper defendant, the ruling lacks the preclusive force necessary to bar the present action.

Further, following the appellate court's remand, Plaintiffs voluntarily dismissed *Ray I* without prejudice under Ohio Civ. R. 41(A)(1)(a).  (Doc. No. 15).  A voluntary dismissal without prejudice "puts the parties in the same position as if the action had never been filed."  *Wilson v. Marino*, 843 N.E.2d 849, 856 (Ohio. Ct. App. 2005) (citation omitted).  Without a final adjudication in the first action, the doctrine of claim preclusion simply does not attach.  Only when a plaintiff files a second unilateral voluntary dismissal does "the second notice of dismissal function[] as an adjudication of the merits of the claim . . . ."  *Olynyk v. Scoles*, 868 N.E.2d 254, 256 (Ohio 2007).  "In that situation, the second dismissal is with prejudice under the double-dismissal rule, and res judicata applies if the plaintiff files a third complaint asserting the same cause of action."  *Id.*  Ohio's "double dismissal" rule does not apply here because *Ray I* was Plaintiffs' *first* voluntary dismissal of their claim.  *See* Ohio Civ. R. 41(A)(1).  Because Plaintiffs' dismissal was without prejudice, they retained the full right to refile their claims—including § 1983 claims—against the proper defendant.

Defendants contend that Plaintiffs should have raised their § 1983 claim in *Ray I*, and that their failure to do so precludes them from raising it now.  (Doc. No. 5 at 18).  Defendants correctly

note that res judicata bars not only claims that were brought in the prior proceeding, but also claims that could have been brought in the prior proceeding. *Rogers v. Whitehall*, 494 N.E.2d 1387, 1388 (Ohio 1986). But Ohio's savings statute and one-year amendment window under Civil Rule 3(A) expressly preserve a plaintiff's ability to correct a misnamed governmental party. The appellate court recognized this error and held that Plaintiffs had not exhausted the amendment period when the trial court prematurely dismissed the case. (Doc. No. 14 at 14-15). It would be inconsistent with the appellate court's holding and Ohio law to bar Plaintiffs' § 1983 claim at this juncture.

Because *Ray I* was dismissed on jurisdictional grounds and Plaintiffs' subsequent voluntary dismissal nullified the prior action for preclusion purposes, Defendants cannot establish the essential first element of claim preclusion. Defendants' motion to dismiss based on res judicata is therefore denied.

## B. SECTION 1983 CLAIM

Plaintiffs allege that ECBC is liable under 42 U.S.C. § 1983 because its acts or omissions led to the violation of C.R.'s substantive due-process rights. (Doc. No. 1-1 at 8-9). Defendants respond that the Complaint fails to identify any official policy or custom attributable to ECBC and therefore does not state a plausible claim for municipal liability. (Doc. No. 2 at 22-24).

Under *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978), "a municipality may not be held liable under § 1983 on a theory of respondeat superior." Rather, municipal liability attaches when an injury is caused by implementing an official policy or custom adopted by the government entity. *Id.* at 694. "Beyond having to identify 'conduct properly attributable to the municipality,' a plaintiff 'must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. In other words, 'a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link

between the municipal action and the deprivation of federal rights.'" *Brown v. Chapman*, 814 F.3d 447, 462 (6th Cir. 2016) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

The Sixth Circuit has articulated four means of establishing a municipal policy or custom: (1) the existence of an illegal official policy or legislative enactment; (2) an official with final decision-making authority ratified illegal actions; (3) inadequate training or supervision; or (4) "a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Plaintiffs advance a "single-act" liability theory, arguing that Defendants violated C.R.'s substantive due-process rights by failing to investigate Doe before placing C.R. in his care. (Doc. No. 1-1 at 8-9). Defendants argue that Plaintiffs' claim fails because they neglect to identify the official with final decision-making authority who ratified the alleged illegal action—a fatal flaw to a single act theory claim. (Doc. No. 12 at 13). Defendants also state that Plaintiffs have failed to plausibly allege that a county official committed an underlying constitutional violation—a necessary component of a *Monell* claim. (*Id.*); (*see also* Doc. No. 5 at 24-26).

### 1. Unconstitutional policy

First, Plaintiffs identify no written ordinance, policy, or regulation implanted by ECBC directing employees to suspend investigating foster families, cease investigating injuries, avoid documenting or reporting abuse, or refrain from providing prompt medical treatment to injured foster children. Thus, Plaintiffs fail to plausibly allege the existence of an illegal official policy or illegal legislative action.

### 2. Decision by an official with final policymaking authority

Plaintiffs correctly note that a single decision by a final policy maker can constitute municipal policy. (Doc. No. 11 at 14). *See also Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986). In such cases, however, a plaintiff must show that a "deliberate choice to follow a course of action

9

[was] made from among various alternatives by the official . . . responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483.

There are two ways an official acting with final decision-making authority may ratify the unconstitutional actions of its employees: (1) "affirmative approval of a particular decision made by a subordinate"; or (2) "failing to meaningfully investigate and punish allegations of unconstitutional conduct." *Alsaada v. City of Columbus*, 536 F. Supp. 3d 216, 271 (S.D. Ohio 2021) (internal quotation marks and citations omitted).  A failure to investigate claim typically requires multiple earlier inadequate investigations that concern comparable clams.  *Moiser v. Evans*, 90 F.4th 541, 549 (6th Cir. 2024) (internal citations and quotation marks omitted).

Failure to identify a specific official with decision-making authority also can undermine a plaintiff's claim.  In *Brown*, the plaintiff alleged that the City of Cleveland ratified an officer's unconstitutional conduct by failing to investigate the plaintiff's allegations of excessive force.  814 F.3d at 462.  Because the plaintiff named the Cleveland police department "as a whole" rather than identifying an official decisionmaker, the plaintiff failed "to establish the requisite degree of culpability."  *Id.*  Thus, the Sixth Circuit affirmed the district court's grant of summary judgment. *Id.*

Plaintiffs do not allege that a county commissioner, or any other official with final decision-making authority, made a specific decision that resulted in a constitutional violation.  Instead, Plaintiffs allege "Erie County" as a whole ratified its employees' conduct.  (Doc. No. 1-1 at 8). These generalized accusations fail to establish the degree of culpability required to plausibly allege a *Monell* claim.  *See Wallace v. Coffee Cnty., Tenn.,* 852 F. App'x 871, 877 (6th Cir. 2021) (observing plaintiff must identify an official with final decision-making authority who "was aware of and ratified" employee's illegal conduct); *Red Zone 12 LLC v. City of Columbus*, 758 F. App'x 508, 516 (6th Cir. 2019) (affirming grant of Rule 12(c) motion for judgment on the pleadings, in part, because

plaintiff failed to allege defendant "served as an official municipal policymaker . . . ."); *Gillispie v. Miami Twp., Ohio*, No. 23-3999/4000/4001, 2025 WL 1276900, at *5 (6th Cir. May 2, 2025) (affirming summary judgment where there was "no suggestion that a specific official took part in approving [employee's] actions" or that "a specific decision-maker was responsible for the alleged ratification"); *Campbell v. Hamilton Cnty.*, No. 1:22cv315, 2023 WL 6295803, at *9 (S.D. Ohio Sept. 27, 2023) (granting Rule 12(c) motion for judgment on the pleadings where complaint failed to identify an official with final decision-making authority); *Jocke v. City of Medina, Ohio*, No. 22-3964, 2023 WL 5167326 (6th Cir. Aug. 11, 2023) (affirming grant of Rule 12(c) motion for judgment on the pleadings where complaint failed to identify an official with final decision-making authority who ratified decision).

### 3. Failure to train or supervise

Nor do Plaintiffs plausibly allege a failure to train or supervise claim. A failure to train or supervise theory requires allegations that "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun., Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). To establish deliberate indifference, the plaintiff must show the municipality was aware of and ignored a history of unconstitutional conduct, and was on notice that inadequate supervision or training was likely to cause injury. *Marcilis v. Twp. of Redford*, 693 F.3d 589, 605 (6th Cir. 2012). A municipality can also be liable for failure to supervise when state actors should have known, because "such likelihood was obvious," that constitutional violations were likely to occur due to lack of training or supervision. *Hunter v. Hamilton Cnty. Bd. of Elections*, 850 F. Supp. 2d 795, 844 (S.D. Ohio 2012) (citation omitted).

Here, Plaintiffs allege no facts that speak to ECBC's training program, its content, its adequacy, or any history of similar constitutional violations that would have put the county on

notice of a need for additional training or supervision.  Plaintiffs do not allege a pattern of prior incidents of abuse, foster-care injuries, reporting failures, or supervisory lapses.  Nor do Plaintiffs establish that ECBC should have known that a constitutional violation was likely to occur absent additional training or supervision.  Thus, Plaintiffs have not met their burden on this front.

### 4. Custom of tolerance or acquiescence

"To sustain a *Monell* claim and hold a municipality liable for a custom of tolerance or acquiescence, a plaintiff must show: '(1) the existence of a clear and consistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct; and (4) that the defendant's custom was the 'moving force' or direct causal link in the constitutional deprivation." *Buehner v. City of Cleveland*, 788 F. Supp. 3d 827, 934 (N.D. Ohio 2025) (quoting *Wallace*, 852 F. App'x at 876).

Plaintiffs allege no prior instances of foster-care injuries, no complaints about caseworkers' investigative practices, and no prior failures to follow statutory reporting requirements.  There is no allegation that ECBC had been alerted to a reoccurring problem and chose not to act.  Without such allegations, any claim of a custom of tolerance or acquiescence fails.  *See Burgess v. Fischer*, 735 F.3d 462, 478-79 (6th Cir. 2013) (holding that a single failure to investigate does not establish an unconstitutional custom or policy).

### 5. Moving force

Lastly, to impose liability, Plaintiffs must show that the municipal policy was the "moving force" behind the constitutional violation. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).  "This means that the plaintiff must show a direct causal link between the policy and the alleged constitutional violation . . . ." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 401 (6th Cir. 2016) (internal quotation marks and citation omitted).  Because Plaintiffs fail to identify any ECBC policy

or custom at all, they necessarily fail to allege that any policy was the moving force behind C.R.'s injuries. This deficiency independently defeats the *Monell* claim.

Because Plaintiffs do not identify a policy, custom, pattern, training deficiency, or a final policymaker decision sufficient to satisfy a recognized basis for municipal liability under *Monell*, I grant Defendants' motion to dismiss the § 1983 claim against ECBC.

### 6. Constitutional violation

Plaintiffs argue that even if I dismiss the § 1983 claim against ECBC, "ECBC employees can yet be held liable for the deprivation(s) of right(s) found attributable to the employees." (Doc. No. 11 at 15). Defendants argue that Plaintiffs failed to plausibly allege a constitutional violation, which prevents Plaintiffs from establishing a *Monell* claim, or holding Colavincenzo or Ghezzi liable in their individual capacity. (Doc. No. 5 at 24). Specifically, Defendants state that Plaintiffs have failed to plausibly allege Colavincenzo or Ghezzi acted with deliberate indifference. (*Id.* at 25-26).

The Supreme Court has recognized that, when the state takes a child into foster care, a "special relationship" between the agency and the child is formed, that gives rise to an affirmative state duty under the Constitution to protect the child from "unnecessary harm in state-regulated foster homes." *Meador v. Cabinet for Hum. Res.*, 902 F.2d 474, 476 (6th Cir. 1990); *see also Lintz v. Skipski*, 25 F.3d 304, 305 (6th Cir. 1994) (noting that the Fourteenth Amendment's "due process [clause] extends the right to be free from the infliction of unnecessary harm to children in state-regulated foster homes.") (quoting *Meador*, 902 F.2d at 476.).

To determine whether a government official has violated its duty to protect a child in foster care, the Sixth Circuit applies the "deliberate indifference" standard. *Id.* at 306. "Deliberate indifference is more than negligence and is akin to subjective recklessness." *Est. of Q.W. v. Lucas Cnty. Child. Servs.*, 682 F. Supp. 3d 671, 686 (N.D. Ohio 2023). The plaintiff must plausibly allege that the official "knew of facts from which they could infer a substantial risk of serious harm, that

they did infer it, and that they acted with indifference towards the individual's rights." *Guertin v. State*, 912 F.3d 907, 926 (6th Cir. 2019) (internal quotation marks omitted).

In order to hold an individual defendant liable under § 1983, "a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Shively v. Green Loc. Sch. Dist. Bd. of Educ.*, 579 F. App'x 348, 352 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 676).  Plaintiffs allege only that "Defendant's employees engaged in unconstitutional behavior by placing [Plaintiff Breanna Ray's] son without properly investigating the foster family C.R. would be placed with."  (Doc. No. 1-1 at 8).  This allegation, even taken as true, is insufficient because it does not show that either Colavincenzo or Ghezzi personally "knew of facts from which they could infer a substantial risk of serious harm[ or] that they did infer it."  *Guertin*, 912 F.3d at 926.  Therefore, I grant Defendants' motion as to Plaintiffs' § 1983 claim against Colavincenzo and Ghezzi as well.

## C.  STATE LAW CLAIMS

Plaintiffs' remaining claims in the Complaint all sound in Ohio law.  (*See* Doc. No. 1).  I have dismissed all federal claims in this case and, therefore, I decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and remand this case to the Erie County Court of Common Pleas. *See, e.g.*, *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (citations omitted).

## IV.  CONCLUSION

For the reasons stated above, I grant Defendants' motion to dismiss Plaintiffs' § 1983 claim, and remand all state law claims for further proceedings.  Further, I dismiss as moot Plaintiffs' motion to stay.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

14